**MENTOR CORPORATION,**
Plaintiff/Cross–
Appellant,

v.

**COLOPLAST, INC., Defendant–Appellant.**

Nos. 92–1428, 92–1429.

United States Court of Appeals,
Federal Circuit.

July 20, 1993.

William L. Anthony, Jr., Brobeck, Phleger & Harrison, of Palo Alto, CA, argued for plaintiff/cross-appellant. With him on the brief was Robert W. Duckworth, Maguire, Voorhis & Wells, P.A., of Orlando, FL. Of counsel was Robert L. Walter.

Edward A. Meilman, Ostrolenk, Faber, Gerb & Soffen, of New York City, argued for defendant-appellant. With him on the brief were Marvin C. Soffen and William O. Gray, III.

Before LOURIE, CLEVENGER, and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

This is an appeal and cross-appeal from the April 7, 1992 judgment of the United States District Court for the Middle District of Florida, *Mentor Corp. v. Coloplast, Inc.*, Case Nos. 89–954–Civ–T–22A, 90–528–Civ–T–22A (M.D.Fla.1992). Following a March 1992 jury verdict, judgment was entered against Coloplast, Inc., holding, *inter alia*, that all the original and reissued claims of Mentor Corporation's U.S. Patent Re. 33,206 were willfully infringed, that the '206 patent was not invalid, and that Coloplast was liable for $250,000 in damages. The district court subsequently granted Coloplast's motion for judgment as a matter of law that willfulness was not shown, and denied its motion in all other respects. Coloplast appeals on the issues of validity and infringement. Mentor cross-appeals on the issue of willfulness. We affirm-in-part, reverse-in-part, and vacate-in-part.

## BACKGROUND

In July 1989, Mentor sued Coloplast for infringement of U.S. Patent 4,475,910, entitled "Male Condom Catheter Having Adhesive on Rolled Portion." While the lawsuit was pending, it was reissued as the '206 patent and Coloplast filed a separate suit for a declaration of invalidity, unenforceability, and noninfringement of that patent. Mentor amended its complaint in the original action to allege infringement of the '206 patent and the two cases were consolidated.

The claimed invention relates to a condom catheter which is used on male patients suffering from incontinence. Claims 1–4 of the '206 patent recite a catheter having a pressure sensitive adhesive on a non-stick (release) layer located on the outer surface of a condom sheath prior to it being rolled up, such that on rolling the sheath outwardly, the adhesive on the outer surface comes into contact with and sticks to the inner surface. When unrolled, the adhesive which was initially applied to the release layer on the outer surface is thereby transferred to the inner surface. Claim 1, from which claims 2–4 depend, reads:

A male condom catheter designed to be connected to a urine collection means and comprising a thin cylindrical sheath member of resilient material rolled outwardly upon itself to form consecutively larger rolls, said sheath member having an outer surface and an inner surface designed to engage a penis when the catheter is unrolled, and the outer surface of the sheath member having prior to the rolling thereof a layer of pressure sensitive adhesive over a substantial portion thereof with a release layer between said adhesive and the outer surface of the sheath member so that as the sheath member is rolled up the pressure sensitive adhesive on the outer surface is in direct contact with the inner surface of an adjacent roll so that *as the sheath member is unrolled the adhesive on the outer surface is transferred to the portion of the inner surface in engagement with the outer surface,* without rolling the catheter inside out, to cause the inner surface to adhere to the penis over which the sheath is placed.

(Emphasis added.)

Claims 6–9, which were added during reissue, do not recite the transfer of adhesive from the outer to the inner surface of the catheter. They read as follows:

6. A male condom catheter to be adhesively secured to a penis and designed to be connected to a urine collection means, said catheter comprising a thin, flexible

cylindrical member of resilient material rolled outwardly upon itself to form a single roll with consecutively larger turns, the outer surface of the cylindrical member having an adhesive release layer thereon and said turns having a layer of pressure sensitive adhesive therebetween in contact with the inner surface of the cylindrical member and in contact with the release layer so that upon said cylindrical member being unrolled onto a penis, the adhesive releases from the adhesive release layer due to the unrolling of the cylindrical member and adheres only to the inner surface of the cylindrical member to cause the cylindrical member to adhere to the penis.

7. The catheter of claim 6 in which the adhesive release layer and the adhesive extend over at least one turn of the roll.

8. The catheter of claim 6 in which there is a bulbous surge chamber secured to the outlet side of the cylindrical member.

9. The catheter of claim 6 in which the adhesive release layer is formed of silicon rubber.

Coloplast sells the Coloplast Self Sealing Urosheath, which is made by applying adhesive directly to the inner surface, the outer surface being coated with a non-stick, release layer. Use of the Coloplast device does not involve the transfer of adhesive from the outer to the inner surface. Coloplast admitted that its device was covered by broadened reissue claims 6–9, but asserted that it had acquired intervening rights and, in any event, that the claims were invalid.

The district court entered judgment according to the jury's answers to special interrogatories, finding, inter alia, that Coloplast infringed claims 1–4 of the '206 patent by the sale of the Coloplast Urosheath, that Coloplast had willfully infringed the '206 patent, that Mentor's broadened reissue claims 6–9 did not recapture any subject matter deliberately cancelled by Mentor, and that Coloplast had not acquired intervening rights with respect to claims 6–9. Following Coloplast's post-trial motion for judgment as a matter of law, the court upheld the jury's finding of infringement, but set aside the finding of willfulness.

## DISCUSSION

On appeal of a judgment entered on a verdict after denial of a motion for judgment as a matter of law under Fed.R.Civ.P. 50(b), Coloplast must show

(1) that reasonable persons could not in light of ... evidence [before them] have found the facts necessary to support the jury's verdict; or (2) that the facts properly found cannot in law support that verdict.

*Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 1513, 220 USPQ 929, 936 (Fed.Cir.), *cert. denied,* 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984).

Coloplast argues that claims 6–9 of the reissue patent are invalid because they are not based on "error" within the meaning of 35 U.S.C. § 251 (1988). Coloplast argues that Mentor deliberately and intentionally amended its claims in response to a prior art rejection and that such conduct is not reissuable error. Thus, it asserts, the court erred as a matter of law. We agree.

Whether the statutory requirement of "error" has been met is an issue of law which we review de novo. This legal conclusion is based on underlying factual inquiries which are reviewed for substantial evidence. *See Ball Corp. v. United States,* 729 F.2d 1429, 1439, 221 USPQ 289, 297 (Fed.Cir.1984) ("On the basis of the facts before us and the reasons given for the cancellation of the claims from the original application, we cannot find, as a matter of law, that [the patentee] is barred from securing reissue....").

Section 251 provides in pertinent part:

Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall ... reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent.

Reissue "error" is generally liberally construed, and we have recognized that "[a]n attorney's failure to appreciate the full scope of the invention" is not an uncommon defect in claiming an invention. *In re Wilder*, 736 F.2d 1516, 1519, 222 USPQ 369, 371 (Fed.Cir.1984), *cert. denied*, 469 U.S. 1209, 105 S.Ct. 1173, 84 L.Ed.2d 323 (1985). However, the reissue procedure does not give the patentee "a second opportunity to prosecute *de novo* his original application," *In re Weiler*, 790 F.2d 1576, 1582, 229 USPQ 673, 677 (Fed.Cir.1986).

> The deliberate cancellation of a claim of an original application in order to secure a patent cannot ordinarily be said to be an "error" and will in most cases prevent the applicant from obtaining the cancelled claim by reissue. The extent to which it may also prevent him from obtaining other claims differing in form or substance from that cancelled necessarily depends upon the facts in each case and particularly on the reasons for the cancellation.

*In re Willingham*, 282 F.2d 353, 357, 127 USPQ 211, 215 (CCPA 1960).

If a patentee tries to recapture what he or she previously surrendered in order to obtain allowance of original patent claims, that "deliberate withdrawal or amendment ... cannot be said to involve the inadvertence or mistake contemplated by 35 U.S.C. § 251, and is not an error of the kind which will justify the granting of a reissue patent which includes the matter withdrawn." *Haliczer v. United States*, 356 F.2d 541, 545, 148 USPQ 565, 569 (Ct.Cl.1966). "The recapture rule bars the patentee from acquiring, through reissue, claims that are of the *same* or of *broader* scope than those claims that were cancelled from the original application." *Ball Corp.*, 729 F.2d at 1436, 221 USPQ at 295 (citations omitted). The recapture rule does not apply where there is no evidence that amendment of the originally filed claims was in any sense an admission that the scope of that claim was not in fact patentable, *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 826, 221 USPQ 568, 574 (Fed.Cir.1984), but that is not the situation here.

During prosecution of the original patent application, the examiner rejected claim 1 as unpatentable over U.S. Patent 4,187,851 to Hauser in view of U.S. Patent 2,389,831 to Welsh and U.S. Patent 3,403,682 to McDonell. According to the examiner, Hauser lacked the positioning of an adhesive means between the rolls, which was taught by Welsh and McDonell. Mentor responded by replacing claim 1, which did not require "transfer" of adhesive from an outer layer to an inner layer, with a new claim 7, which read in part as follows:

> A male condom catheter ... comprising a thin cylindrical sheath member ... having an outer surface and an inner surface ... and the outer surface of the sheath member having a layer of pressure sensitive adhesive over a substantial portion thereof with a release layer between said adhesive and the outer surface of the sheath member so that as the sheath member is unrolled the adhesive on the outer surface *is transferred* to the porton [sic] of the inner surface in engagement with the outer surface to cause the inner surface to adhere to the penis over which the sheath is placed.

(Emphasis added.)

The claims were again rejected under 35 U.S.C. § 103 as unpatentable over McDonell in view of Welsh. The examiner stated that McDonell disclosed a male catheter with a sheath having an outer surface with adhesive and a release layer, and that Welsh showed a sheath with adhesive, which when unrolled was transferred from the outer surface to the inner surface. In response, Mentor further amended claim 7 to recite that as the sheath member is

> rolled up the pressure sensitive adhesive on the outer surface is in direct contact with the inner surface of an adjacent roll so that as the sheath member is unrolled, the adhesive on the outer surface *is transferred without rolling the catheter inside out....*

(Emphasis added.) Mentor argued that "none of the references relied upon actually showed the *transfer of adhesive* from the outer surface to the inner surface as the sheath is rolled up and then unrolled." Men-

tor characterized the prior art references as disclosing the "transfer" of adhesive from the outer to the inner surface solely by turning the sheath inside out so that the outer surface becomes the inner surface and the adhesive always remains on the same surface. Amended claim 7 then issued as claim 1 as a result of Mentor's amendments and argument.

Within two years of issuance, Mentor filed a reissue application accompanied by an attorney declaration, stating that Mentor claimed less than it had a right to claim because the claims of the '910 patent did not "read literally upon male external catheters manufactured using a process in which the adhesive is applied to the inner latex surface of the sheath at the time of manufacture, before the device was rolled." The declaration further stated that "[t]he error arose because [the attorney] assumed that the manufacture of male external catheters by applying the adhesive to the inner latex surface of the catheter was too impractical to be commercially feasible...." Mentor thus added new claims lacking the requirement of transfer of adhesive from the outer to the inner layer. The examiner rejected the claims as obvious over McDonell in view of Welsh. After Mentor submitted detailed information on commercial success, the examiner allowed the claims and the patent was reissued with original claims 1–4 and new claims 6–9.

Coloplast correctly argues that reissue claim 6, which does not include the adhesive transfer limitation, impermissibly recaptures what Mentor deliberately surrendered in the original prosecution. Specifically, the reissue claims do not contain the limitation that, during rolling and unrolling, the adhesive be transferred from the outer to the inner surface of the catheter.

 Error under the reissue statute does not include a deliberate decision to surrender specific subject matter in order to overcome prior art, a decision which in light of subsequent developments in the marketplace might be regretted. It is precisely because the patentee amended his claims to overcome prior art that a member of the public is entitled to occupy the space abandoned by the patent applicant. Thus, the reissue statute cannot be construed in such a way that competitors, properly relying on prosecution history, become patent infringers when they do so. In this case, Mentor narrowed its claims for the purpose of obtaining allowance in the original prosecution and it is now precluded from recapturing what it earlier conceded.

Mentor argues that the reissue claims do not recapture subject matter surrendered during the original prosecution. Mentor specifically alleges that recapture is avoided because newly-added reissue claims 6–9 are materially narrower in some respects, albeit broader in others.

 Reissue claims that are broader in certain respects and narrower in others may avoid the effect of the recapture rule. If a reissue claim is broader in a way that does not attempt to reclaim what was surrendered earlier, the recapture rule may not apply. However, in this case, the reissue claims are broader than the original patent claims in a manner directly pertinent to the subject matter surrendered during prosecution. Mentor thus attempted to reclaim what it earlier gave up. Moreover, the added limitations do not narrow the claims in any material respect compared with their broadening.

The limitation in claim 6 that the catheter material be "flexible" did not materially narrow the claims, which already recited that the material be "resilient." Likewise, the limitation that the catheter be rolled outward to form a "single" roll did not materially limit the claims; the catheter can only be rolled and applied from a single end to form a single roll when the other end is connected to a urine collection means. Further, the addition of the words "thereon," referring to the location of the adhesive release layer on the outer surface prior to unrolling, and "only," referring to the adhering of the adhesive to the inner surface after unrolling, did not materially narrow the claims.

Additionally, claims 7–9, which depend from claim 6, do not avoid recapture because they do not add any limitations, material in relation to the impermissible broadening, that distinguish them over claim 6, which we

have determined is not a proper subject for reissue. Reissue claim 7, which requires adhesive on "at least one turn of the roll," is not materially narrower than original claim 7, the subject matter of which was partially surrendered. Reissue claim 8 recites a bulbous surge chamber, which was already in the prior art. Reissue claim 9, which recites the material of the adhesive release layer, does not materially narrow the claim. Accordingly, they do not avoid recapture.

Thus, since none of reissue claims 6–9 meets the legal requirements for reissue, the court erred in denying the motion for judgment of invalidity as a matter of law. We therefore reverse that part of the court's judgment finding claims 6–9 not invalid. At this stage of the proceedings, we need not reach the issue of infringement of the reissue claims in light of our conclusion regarding their invalidity. We thus vacate the holding on infringement of claims 6–9.

 Coloplast also argues that it did not infringe claims 1–4 of the Mentor patent as a matter of law. We agree. Neither party disputes the structure of the Coloplast device or how it is used. The parties only dispute the proper scope of the claims. Claim construction is an issue of law which we review de novo. *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1578, 6 USPQ2d 1557, 1559 (Fed.Cir.1988). Mentor argues that claims 1–4 are product-by-process claims and that, under *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 18 USPQ2d 1001 (Fed.Cir.1991), the process limitations do not prevent the claims from encompassing an identical product made by a different process. Mentor's argument, however, is inapplicable to the present case. The claims in issue here are not in fact product-by-process claims; product-by-process claims recite how a product is made, not how it is used. The only process aspect of the present claims relates to how the product is used, and that is an essential aspect of the claims.

 Claims 1–4 recite a catheter in which the adhesive is transferred from the outside of the catheter to the inside upon rolling and unrolling. Neither party disputes that Coloplast's device excludes the transfer of adhesive from the outer to inner surface. Thus,

as a matter of law, Coloplast's device cannot infringe those claims, and no reasonable juror could have found otherwise. The court therefore erred in denying Coloplast's motion for judgment of noninfringement as a matter of law.

Because of our disposition on the issues of infringement and validity, we do not address Mentor's cross-appeal on willfulness. We affirm the judgment in all other respects.

## CONCLUSION

We reverse the district court's decision denying the motion for judgment as a matter of law concerning noninfringement of claims 1–4 and invalidity of claims 6–9. We vacate the court's judgment with respect to infringement of claims 6–9. We affirm the judgment in all other respects.

## COSTS

Costs to Coloplast.

*AFFIRMED–IN–PART, REVERSED–IN–PART, AND VACATED–IN–PART.*