**Jaswant S. PANNU and Jaswant S. Pannu, M.D., P.A., Plaintiff,**

v.

**STORZ INSTRUMENTS, INC., Defendant.**

**No. 977083–CIV.**

United States District Court, S.D. Florida.

July 10, 2000.

Edward W. Remus, Jonathan R. Sick, McAndrews, Held & Malloy, Ltd., Chicago, IL, Peter Prieto, Holland & Knight LLP, Miami, FL, Craig E. Larson, of counsel, Bausch & Lomb, Rochester, NY, Rita D. Vacca, of counsel, Bausch & Lomb Surgical, St. Louis, MO, for Defendant Storz Instruments, Inc.

Michael Cesarano, Bienstock & Clark, Miami, FL, for Plaintiffs, Jaswant S. Pannu et al.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Defendant's, Storz Motion for Summary Judgment, filed herein on March 20, 2000. The Court has carefully considered the motion, having heard arguments of counsel on July 7, 2000, and being otherwise fully advised in the premises.

## I. BACKGROUND

Plaintiff obtained a patent, U.S. Patent No. 4,435,855 ("855 patent"), in 1984. The patent covered a specific intraocular lens design, composing of two positioning and supporting elements referred to as "haptics."[1] The lens contains circular discs at the end of each haptic, which is snag resistant. The patent is directed to a medical device which is an artificial lens implanted in the interior of the eye after a patient's cataractous lens is removed. During the 1980's, Defendant paid royalties to Plaintiff for use of the 855 patent.

On October 20, 1987, U.S. Patent No. Re 32,525 ("525 patent") was issued to Plaintiff. This was a reissue of Plaintiff's previous patent.[2] Plaintiff claims that Defendant has infringed on the 525 patent for a long time. Plaintiff then filed this one count action, alleging: 1) Patent infringement. Plaintiff seeks injunctive relief against Defendant requiring it to cease its infringement of the 525 patent, and wants an accounting for damages resulting from the infringement. Plaintiff also seeks punitive damages as a result of the intentional infringement.

Defendant then filed a counterclaim, seeking a declaratory judgment of patent invalidity or noninfringement of the 525 patent.

Defendant files this Motion for Summary Judgment solely on the issue of invalidity of the reissued patent because the broadened patent violates deep-rooted public policy. Plaintiff contends that this action contains genuine issues of material fact that cannot be determined in a summary judgment motion.

## II. DISCUSSION

### A. Summary Judgment

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). According to the plain language of Fed. R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

Essentially, so long as the non-moving party has had an ample opportunity to

---

1. The haptics press against the sides of the eye chamber when the lens is inserted to hold the lens in place.

2. The Court notes that Plaintiff fails to mention that the 525 patent was a reissue in the Complaint.

conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202.

### B. Patent

■■■ "[T]he Supreme Court has repeatedly held that the construction of a patent claim is a matter of law exclusively for the court." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 977 (Fed. Cir.1995); *Hogg v. Emerson,* 47 U.S. 437, 484, 6 How. 437, 12 L.Ed. 505 (1848). "A patent shall be presumed valid, and each claim shall be presumed valid independently of the validity of other claims." *Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve, Inc.,* 796 F.2d 443, 446 (Fed.Cir. 1986). "The burden is on the party asserting invalidity to prove it with facts supported by clear and convincing evidence." *Id.* at 446.

Defendant contends that the patent is invalid, and "[d]etermining whether an applicant has met the statutory requirements of 35 U.S.C. § 251 ('the recapture law') is a question of law." *In re Clement,* 131 F.3d 1464, 1468 (Fed.Cir.1997). The Court's determination in *Hester Industries* mirrors that in this case, in that, "there are no underlying material facts as to which there is a genuine issue in dispute. The original patent's prosecution history . . . is before us and undisputed. All that remains is the ultimate legal conclusion as to whether the asserted reissue claims fail to meet the 'error' requirement because the claims im-

permissibly recapture surrendered subject matter." *Hester Industries v. Stein, Inc.,* 142 F.3d 1472, 1484 (Fed.Cir.1998); *See Mentor Corporation v. Coloplast, Inc.,* 998 F.2d 992, 994–97 (Fed.Cir.1993). The facts in this action consist of the claims submitted by Plaintiff and the public record. Interpretation of the public record and the claims are solely the province of the Court, and are determined as a matter of law. *See Markman v. Westview Instruments,* 52 F.3d 967 (Fed.Cir.1995).

### C. Recapture

■■■ Defendant claims that Plaintiff's patent is invalid based on the rule of recapture. Plaintiff argues that Defendant cannot prove by clear and convincing evidence that Plaintiff relinquished subject matter in order to obtain allowance of his patent, regaining that which he had given up.[3] "The recapture rule . . . prevents a patentee from regaining through reissue the subject matter that he surrendered in an effort to obtain allowance of the original claims." *In re Clement,* 131 F.3d at 1468; *Mentor,* 998 F.2d at 995. "Under this rule, claims that are 'broader than the original patent claims in a manner directly pertinent to the subject matter surrendered during prosecution' are impermissible." *Id.* at 1468; *Id.* at 996.

■■■ "The first step in applying the recapture rule is to determine whether and in what 'aspect' the reissue claims are broader than the patent claims." *Id.* at 1468. When Plaintiff applied for the first set of patents in 1982, the Patent Office issued an "Office Action."[4] The Office Action rejected claims 1–14 as obvious, and unpatentable. Defendant's Exhibit C. The Office Action relied on three prior art references for the rejection. *Id.* The focus of the rejection was on the snag resistant disc at the end of the haptics. *Id.* Plaintiff filed a response to the Office Action, and

---

**3.** The Court notes that the clear and convincing evidence burden is directed towards the invalidity of a patent, but is never discussed in the context of recapture.

**4.** An Office Action is the report by a Patent Examiner explaining why the patent application was rejected.

then filed a Supplemental Amendment, canceling all of the original claims except for dependent claims 8 and 9, which were amended, and claim 15. *Id.* Plaintiff also submitted new claims 16–22. New claim 16 contained the same descriptions as the original claims, except Plaintiff added a limitation to the shape and positioning to the haptics. Specifically, the new claim stated that the haptics would contain "a continuous, substantially circular arc having a diameter greater than the diameter of said lens body." *Id.* Plaintiff argued that this limitation was a distinguishing factor over the prior art. *Id.* After certain discussions between Plaintiff's attorney and the Patent Examiner, and subsequently, certain claim modifications, the claim was accepted.

In order to receive a reissued patent, Plaintiff had to submit reissue Oaths. In both of his reissue Oaths, Plaintiff states: "I duly and without deceptive intent narrowed the claims beyond what was necessitated by the applied prior art by describing the shape of the outwardly extending elements as defining a 'continuous, substantially circular arc having a diameter greater than the diameter of said lens body.'" Defendant's Exhibit D, at 31, 96–97. The Patent Examiner allowed the change in the Reissue patent, but had Plaintiff include certain changes, including size limitations, where the snag resistant means would be at least three times greater than the flexible elements, and the supporting elements would be substantially coplaner with the haptics. *Id.*

Therefore, the reissue claims deleted the "continuous, substantially circular arc" necessity. "[A] reissue claim that deletes a limitation or element from the patent claims is broader in that limitation's aspect." *In re Clement,* 131 F.3d at 1468. Plaintiff admits in the reissue Oaths that he narrowed the amended claims by including this limitation. Additionally, a company involved in the intraocular lens industry received a letter from Plaintiff's attorney stating that: "This original patent was resubmitted to the Patent and Trademark Office which reconsidered the

invention and reissued the patent with a substantially broadened scope of protection." Defendant's Exhibit F. "This deliberate withdrawal or amendment of claims in order to obtain the original patent cannot be said to involve the inadvertence or mistake contemplated by 35 U.S.C. § 251, and is not an error of the kind which will justify the reissue patent which includes the matter withdrawn." *Haliczer v. U.S.,* 174 Ct.Cl. 507, 356 F.2d 541, 545 (1966). The reissued patent clearly broadens the protection.

Plaintiff argues that the narrowing of the claim defeats the broadening element, and the recapture rule is not applicable. "Reissue claims that are broader in certain respects and narrower in others may avoid the effect of the recapture rule." *Mentor,* 998 F.2d at 996. The Court in *Mentor* went on to say that in their case, "the reissue claims are broader than the original patent claims in a manner directly pertinent to the subject matter surrendered during prosecution." *Id.* The Court held that the reissue did not avoid the recapture rule, because the broadened claims relate to the subject matter previously surrendered, and they do not materially narrow the claim. *Id.* The next inquiry in this action, is whether the broadened aspect relates to surrendered subject matter, and then, whether the claim was sufficiently narrowed.

"The second step is to determine whether the broader aspects of the reissue claims relate to surrendered subject matter." *In re Clement,* 131 F.3d at 1469; *Mentor,* 998 F.2d at 995–96. To determine this, the Court looks into the prosecution history for arguments and changes to the claims in an effort to overcome prior art. *Id.* "Surrender can occur by way of arguments or claim changes made during the prosecution of the original patent application." *Hester Industries, Inc.,* 142 F.3d at 1480–81. Plaintiff made certain claims to the PTO in seeking approval of his original patent claim. Plaintiff's claim was then rejected pursuant to an Office Action.

Plaintiff subsequently canceled certain claims, and amended others. Plaintiff then made representations to the PTO regarding the amendment to the 855 patent claim, in which he added the "continuous, substantial circular" limitation to avoid the prior art cited in the Office Action. Defendant's Exhibit D. During the application process regarding the 855 patent, Plaintiff stated in the amendment, that "the language in question was added to claim 1 to overcome the applied Shearing Patent ..." *Id.* at 32, 98. Plaintiff also stated in his Oaths that the language was added to the claim to overcome the applied art obstacles. *Id.* Plaintiff deleted the language in obtaining his reissued patent. Therefore, Plaintiff was able to broaden his claim, and based on his own assertions, the broadened aspect clearly relates to the surrendered subject matter. *See Haliczer,* 356 F.2d at 545; *Minuteman International, Inc. v. Critical–Vac Filtration Corp.,* 1997 WL 370204 (N.D.Ill.).

"Once we determine that an applicant has surrendered the subject matter of the canceled or amended claim, we then determine whether the subject matter has crept into the reissue claim." *In re Clement,* 131 F.3d at 1469. The reissue claim, when compared with the original 855 patent claim that was rejected, shows that the deleted portion of the reissue contains the subject matter that was eventually avoided to distinguish it from the prior art. The subject matter crept into the reissue claim. "If the scope of the reissue claim is the same as or broader than that of the canceled claim then the patentee is clearly attempting to recapture surrendered subject matter and the reissue claim is therefore, unallowable." *Id.* at 1469; *Ball Corp. v. U.S.,* 729 F.2d 1429, 1436 (Fed.Cir.1984).

The final test regarding the recapture rule is whether the narrowed portions of the reissue claims help it escape the rule. "[A] reissue claim narrower in scope escapes the recapture rule entirely." *Id.* at 1469; *Id.* at 1436. "The purpose of this exception to the recapture rule is to allow the patentee to obtain through reissue a scope of protection to which he is rightfully entitled for such overlooked aspects." *Hester Industries, Inc.,* 142 F.3d at 1483. Additionally, the reissue claim must be materially or substantially narrower. *Id.* Plaintiff's main argument is that the reissue patent was broadened in certain areas, but the narrower sections result in the patent not reclaiming what was surrendered. The reissue claim narrowed the patent in two areas.

The first area altered the verbiage describing the snag resistant means, from being "substantially greater" than the width of the haptics, to "at least three times greater" than the width of the haptics. The second change states that the snag resistant means must be "substantially coplanar" with the haptics.

Plaintiff's originally filed claim contained the limitation, that "said snag resistant disc having a width which is ... at least three times greater than the width of the flexible strand." Defendant's Exhibit C at 12. Additionally, this limitation remained in dependant claim 20 throughout the prosecution. Therefore, the newly included limitation regarding the size of the snag resistant means did not contain an overlooked aspect of the original patent. The terms changed from substantially greater to three times greater. This is not a material alteration. Based on the verbiage of the original patent claim, and the elements of the reissue patent, the limitation did not materially or substantially narrow the claim.

The limitation that the snag resistant means must be "substantially coplanar" with the haptics parallels similar terminology in the originally filed claim, which stated that "said snag-resistant disc lying in a plane sufficiently close to a plane of the lens so that both the disc and lens can fit into a posterior chamber behind an eye's iris." *Id.* Additionally, this limitation was placed on dependent claim 22 and maintained throughout the prosecution of the 855 patent. Plaintiff cannot claim that this narrowing limitation was an overlooked aspect of the invention. Likewise,

the narrowing limitation does not materially narrow the claim.

"[T]he reissue statute is 'based on fundamental principles of equity and fairness, and should be construed liberally.'" *Hester*, 142 F.3d at 1479. "[B]ut not that liberally. The realm of corrections ... does not include recapturing surrendered subject matter without the addition of materially-narrowing limitations, in an attempt to 'custom fit' the reissue claims to a competitor's product." *Id.* at 1483. "Indeed, the reissue procedure does not give the patentee the right 'to prosecute de novo his original application.'" *Id.* at 1479; *In re Weiler*, 790 F.2d 1576, 1579 (Fed.Cir.1986).

### III. CONCLUSION

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment is hereby **GRANTED;**

2. The Court finds that the reissue patent, U.S. Patent No. Re 32,525, is invalid under 35 U.S.C. § 251, the recapture rule. Therefore, Plaintiff cannot maintain a cause of action for patent infringement;

3. The above styled action is hereby dismissed, with prejudice;

4. The clerk is to deny all pending motions as moot; and

5. This case is closed.