Jaswant S. PANNU and Jaswant S. Pannu, M.D., P.A., Plaintiffs–Appellants,

v.

STORZ INSTRUMENTS, INC., Defendant–Appellee.

No. 00–1482.

United States Court of Appeals, Federal Circuit.

July 25, 2001.

Michael C. Cesarano, Akerman, Senterfitt & Eidson, P.A., of Miami, FL, argued for plaintiffs-appellants.

Edward W. Remus, McAndrews, Held & Malloy, Ltd., of Chicago, IL, argued for defendant-appellee. With him on the brief was Jonathan R. Sick. Of counsel on the brief were Craig E. Larson, Bausch & Lomb, Incorporated, of Rochester, NY; and Rita D. Vacca, Bausch & Lomb Surgical, Inc., of St. Louis, MO.

Before MAYER, Chief Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

MAYER, Chief Judge.

Jaswant S. Pannu and Jaswant S. Pannu, M.D., P.A. (collectively Pannu) appeal the judgment of the United States District Court for the Southern District of Florida, *Pannu v. Storz Instruments, Inc.*, 106 F.Supp.2d 1304 (S.D.Fla.2000), granting summary judgment for Storz Instruments, Inc. (Storz) that U.S. Patent No. Re 32,525 is invalid under 35 U.S.C. § 251, the recapture rule. Because the reissued patent improperly broadened claims in a manner directly pertinent to subject matter surrendered during prosecution, we affirm.

*Background*

In 1980, Pannu filed a patent application for an artificial intraocular lens, S/N 136,-243 ('243 application). An intraocular lens is an artificial plastic lens that may be implanted in an eye to replace a natural lens. The '243 application disclosed a round lens called an "optic" that focuses light on the retina, and two or more elements called "haptics" that are attached to the optic and contact internal tissue in the eye for the purpose of positioning and securing the optic. The haptics in Pannu's application included "snag resistant" discs at the end. In 1981, Pannu filed a continuation-in-part application, S/N 261,953 ('953 application), based on the original '243 application. The '953 application added new matter, claiming a lens in which the haptics are "integrally molded" to the lens body, and the lens could be placed in either the anterior or posterior chamber of the eye.[1]

Independent claim 1 of the '953 application reads as follows:

A posterior chamber intraocular lens comprising:

a lens having a width and a thickness;

a retention loop including a flexible strand having a width and a thickness and such strand is joined at one end to the lens and has an opposite free end;

and a snag resistant disc joined to the flexible strand's free end;

said snag resistant disc having a width which is at least 3 times greater than the thickness of the disc, at least 3 times

---

1. The eye is considered to have two chambers separated by the iris. The anterior chamber lies between the back surface of the cornea and front surface of the iris. Attorneys' Dictionary of Medicine and Word Finder A–280

(1995). The posterior chamber is the space between the back surface of the iris and the front surface of the crystalline lens. *Id.* at P–280.

greater than the width of the flexible strand, and at least ⅙ as great as the width of the lens for smoothly guiding the free end of the flexible strand across an inner edge of an iris when moving said strand into and out of a posterior chamber of an eye;

said snag resistant disc lying in a plane sufficiently close to a plane of the lens so that both the disc and lens can fit into a posterior chamber behind an eye's iris.

The examiner rejected claims 1–14 as obvious under 35 U.S.C. § 103 in light of four prior art references: U.S. Patent No. 4,159,546 (Shearing patent), a publication showing the "Lindstrom Centrex" lens, U.S. Patent No. 4,249,271 (Poler patent), and U.S. Patent No. 4,092,743 (Kelman patent). In response, Pannu filed a supplemental amendment that cancelled claims 1–7 and 10–14, added new claims 16–22, and modified claims 8 and 9 to be dependent upon claim 16. Independent claim 16 reads as follows:

An intraocular lens comprising:

a lens body;

at least two flexible positioning and supporting elements integrally formed with said lens body and extending from the periphery of said lens body;

said elements defining a continuous, substantially circular arc having a diameter greater than the diameter of said lens body, said arc curved toward said lens circumference; and

snag resistant means integrally formed on the free end of said elements for smoothly guiding the lens across eye tissue when implanting the lens.

Pannu raised six arguments for the patentability of claim 16 over the four prior art references, including the distinction of "a continuous substantially circular arc having a diameter greater than the diameter of the lens body ... which significantly enhance the easy insertibility of applicant's lens and significantly reduce any possibility of snagging delicate eye tissue." The examiner accepted Pannu's arguments, and allowed claim 16 subject to minor amendments to set forth precisely the structural details of the haptics. Claim 16 issued as claim 1 of U.S. Patent No. 4,435,855 ('855 patent) and reads as follows:

An intraocular lens comprising:

a lens body;

at least two spaced flexible positioning and supporting elements integrally formed with said lens body as a one piece construction and extending radially outward from the periphery of said lens body;

said elements defining a continuous, substantially circular arc having a diameter greater than the diameter of said lens body, said arc curved toward said lens circumference and terminating in a free end spaced from said periphery; and

snag resistant means integrally formed on the free end of said elements for smoothly guiding and positioning the lens across contacted eye tissue when implanting the lens,

said snag resistant means having an uninterrupted continuously smoothly curved outer periphery which merges with said free end and is substantially greater in size than the width of said flexible elements.

In 1985, Pannu filed an application for reissue of the '855 patent. The supplemental reissue oath stated that Pannu "unduly and without deceptive intent narrowed the claims beyond what was neces-

sitated by the applied prior art by describing the shape of the outwardly extending elements as defining 'a continuous, substantially circular arc having a diameter greater than the diameter of the lens body.'" The examiner allowed Pannu to delete "defining a continuous, substantially circular arc having a diameter greater than the diameter of said lens body, said arc curved toward said lens circumference and terminating in a free end" from claim 1. However, the examiner required Pannu to insert additional limitations into the last section of the claim. The last section of claim 1 reads as follows with italics indicating additions and bracketing indicating deletions:

> said snag resistant means having an uninterrupted, continuously smoothly curved outer periphery which merges with said free end and is [substantially] at least three times greater in [size] width than the width of said flexible elements, said snag resistant elements and said positioning and supporting elements being substantially coplanar.

The '855 patent reissued as U.S. Patent No. Re 32,525 ('525 reissue).

Pannu filed suit against Storz, alleging that intraocular lenses sold by Storz infringed the '525 reissue. Storz filed a counterclaim seeking a declaratory judgment of patent invalidity, and moved for summary judgment that the '525 reissue improperly recaptures subject matter Pannu surrendered in obtaining allowance of claim 1 of the '855 patent. The court granted Storz's motion for summary judgment of invalidity and Pannu appeals.

## Discussion

■ "We review a district court's grant of summary judgment de novo."

*Vanmoor v. Wal–Mart Stores, Inc.,* 201 F.3d 1363, 1365, 53 USPQ2d 1377, 1378 (Fed.Cir.2000). Determining whether the claims of a reissued patent violate 35 U.S.C. § 251 is a question of law, which we review *de novo. In re Clement,* 131 F.3d 1464, 1468, 45 USPQ2d 1161, 1163 (Fed. Cir.1997); *Mentor Corp. v. Coloplast, Inc.,* 998 F.2d 992, 995, 27 USPQ2d 1521, 1524 (Fed.Cir.1993). This legal conclusion can involve underlying findings of fact, which are reviewed for substantial evidence. *Hester Indus., Inc. v. Stein, Inc.,* 142 F.3d 1472, 1479, 46 USPQ2d 1641, 1647 (Fed. Cir.1998); *Mentor,* 998 F.2d at 994, 27 USPQ2d at 1524 (citing *Ball Corp. v. United States,* 729 F.2d 1429, 1439, 221 USPQ 289, 297 (Fed.Cir.1984)). However, summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Vanmoor,* 201 F.3d at 1365, 53 USPQ2d at 1378. The underlying facts in this case are taken directly from the prosecution file histories and the claims of the '855 patent and the '525 reissue, and are not disputed. *See Hester,* 142 F.3d at 1484, 46 USPQ2d at 1651. Claim construction is a purely legal question, *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (en banc), and therefore, comparison of the claims of the '855 patent and the '525 reissue is a purely legal question appropriate for summary judgment, *Westvaco Corp. v. Int'l Paper Co.,* 991 F.2d 735, 741, 26 USPQ2d 1353, 1358 (Fed.Cir.1993) ("A determination of whether the scope of a reissue claim is identical with the scope of the original claim is a question of law, which we review de novo.").

■ The recapture rule "prevents a patentee from regaining through reissue

the subject matter that he surrendered in an effort to obtain allowance of the original claims." *Clement,* 131 F.3d at 1468, 45 USPQ2d at 1164. Reissued claims that are broader than the original patent's claims in a manner directly pertinent to the subject matter surrendered during prosecution are impermissible. *Id.* (quoting *Mentor,* 998 F.2d at 996, 27 USPQ2d at 1525). Application of the recapture rule is a three-step process. The first step is to "determine whether and in what 'aspect' the reissue claims are broader than the patent claims." *Id.* "The second step is to determine whether the broader aspects of the reissued claim related to surrendered subject matter." *Id.* Finally, the court must determine whether the reissued claims were materially narrowed in other respects to avoid the recapture rule. *Hester,* 142 F.3d at 1482–83, 46 USPQ2d at 1649–50; *Clement,* 131 F.3d at 1470, 45 USPQ2d at 1165.

 With respect to the shape of the haptics, claim 1 of the '525 reissue is broader than claim 1 of the original '855 patent. Claim 1 of the '855 patent limited the haptics to "a continuous, substantially circular arc having a diameter greater than the diameter of said lens body, said arc curved toward said lens circumference." Claim 1 of the '525 reissue eliminated this limitation on the shape of the haptics. "A reissue claim that does not include a limitation present in the original patent claims is broader in that respect." *Hester,* 142 F.3d at 1480, 46 USPQ2d at 1648. In addition, Pannu's reissue oath admitted that he unnecessarily narrowed the scope of the claim with respect to the shape of the haptics. He stated that "the [haptics] may actually be of any shape as long as the elements terminate in a free end having snag resistant means as now recited in claim 1." Correction of Pannu's unnecessary narrowing of claim 1 must involve a corresponding broadening of the reissued claim.

 Pannu argues that even if the reissued claim is broader, it did not relate to subject matter surrendered during prosecution. This argument is without merit. As originally filed, none of the claims in the '953 application limited the shape of the haptics. The examiner rejected claims 1–14 as obvious. In response to the rejection, Pannu filed a supplemental amendment canceling claim 1 and adding new independent claim 16. Claim 16 described the haptics as "defining a continuous, substantially circular arc having a diameter greater than the diameter of said lens body, said arc curved toward said lens circumference." Pannu argued to the examiner, "no such particular shape is disclosed by the lenses of either Shearing or Lindstrom. In fact, Shearing teaches away from the concept of a continuous substantially circular arc supporting strand ... [and] the Lindstrom lens illustrates a supporting strand with a somewhat irregular, elliptical shape." The addition of the "continuous, substantially circular arc" limitation to claim 16 and the statements made by Pannu to the examiner during prosecution of the '855 patent limited the claim to exclude an interpretation that did not include a continuous, substantially circular arc. *See Southwall Techs., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1576, 34 USPQ2d 1673, 1676 (1995). The shape of the haptics was broadened during reissue and was the same subject matter that was surrendered during prosecution.

Pannu argues, however, that because the reissued claims were materially narrowed in other respects, the '525 reissue

avoids the recapture rule. *See Hester,* 142 F.3d at 1482–83, 46 USPQ2d at 1649–50; *Clement,* 131 F.3d at 1470, 45 USPQ2d at 1165; *Mentor,* 998 F.2d at 996, 27 USPQ2d at 1525. Instead of being "substantially greater" than the width of the haptics, the snag resistant means must now be "at least three times greater" than the width of the haptics. In addition, the snag resistant means must now be "substantially coplanar" with the haptics. Pannu argues that both modifications relate to the configuration of the haptics, and therefore, what is gained by the elimination of one limitation is given up by the addition of the other limitations.

 The "continuous, substantially circular arc" limitation related to the shape of the haptics. The narrowing aspect of the claim on reissue, however, was not related to the shape of the haptics, but rather the positioning and dimensions of the snag resistant means. Therefore, the reissued claims were not narrowed in any material respect compared with their broadening. Furthermore, "if the patentee is seeking to recover subject matter that had been surrendered during the initial prosecution this flexibility of analysis is eliminated, for the prosecution history establishes the substantiality of the change and estops its recapture." *Anderson v. Int'l Eng'g & Mfg., Inc.,* 160 F.3d 1345, 1349, 48 USPQ2d 1631, 1634 (Fed.Cir. 1998); *see also Mentor,* 998 F.2d at 996, 27 USPQ2d at 1525 ("[I]n this case, the reissue claims are broader than the original patent claims in a manner directly pertinent to the subject matter surrendered during prosecution. Mentor thus attempted to reclaim what it earlier gave up."). In prosecuting the '855 patent, Pannu specifically limited the shape of the haptics to a "continuous, substantially circular arc."

On reissue, he is estopped from attempting to recapture the precise limitation he added to overcome prior art rejections.

*Conclusion*

Accordingly, we affirm the judgment of the United States District Court for the Southern District of Florida.

*AFFIRMED.*